Argued and submitted February 14, affirmed August 31, 2005

## PROGRESSIVE INSURANCE,
*Respondent,*

*v.*

## NATIONAL AMERICAN INSURANCE
## COMPANY OF CALIFORNIA,
*Appellant.*

02C-14226; A123317

118 P3d 836

James C. Chaney argued the cause for appellant. With him on the briefs was The Chaney Firm LLC.

Michael A. Lehner argued the cause for respondent. With him on the brief was Lehner & Rodrigues PC.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong,* Judge.

BREWER, C. J.

---

* Armstrong, J., *vice* Richardson, S. J.

**BREWER, C. J.**

This is a contribution action between two motor vehicle liability insurers. Plaintiff defended and settled a personal injury claim against its insured, Eugene Fastener & Supply Co., Inc. (Eugene Fastener), that arose from a motor vehicle accident. Plaintiff then brought this action for contribution against defendant, which also insured Eugene Fastener against motor vehicle liability claims for the same coverage period. The parties filed cross-motions for summary judgment; the trial court granted plaintiff's motion and denied defendant's motion. Defendant appeals.

The primary issues on appeal are (1) whether defendant's policy excluded the driver of the insured's vehicle from the coverage required by the Oregon Financial Responsibility Law (FRL) in accordance with ORS 742.450(6) and (2) whether the insured's vehicle that was involved in the accident was a covered vehicle under defendant's policy. We affirm.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. Because the pertinent facts are not in dispute, we review to determine whether the moving parties are entitled to judgment as a matter of law.

Mitchell was the vice president and owner of Eugene Fastener. In June 1995, Eugene Fastener's local insurance agent, Cross, secured a commercial liability policy for the company from defendant that included motor vehicle liability coverage with an individual liability limit of $1 million. On June 14, Mitchell signed an application for that coverage. The application stated that Mitchell was excluded from coverage and that defendant would not "pay for any claim arising from an accident or loss while the insured's car is being driven, either with or without the insured's permission, by" an excluded driver. However, the application was not attached to the policy when it was delivered to Eugene Fastener.

The policy was renewed on its anniversary date in 1996. With the renewal, defendant issued an endorsement

stating that it would not be liable for any accidents or losses occurring while a covered vehicle was driven by Mitchell. The endorsement included a signature line for the insured to agree, but it was never signed by Mitchell or anyone else on behalf of Eugene Fastener.

In April 1997, Cross requested that defendant add a 1997 Ford Expedition as a covered vehicle under defendant's policy. Defendant did so. Cross simultaneously obtained coverage for that vehicle from plaintiff. On April 10, Mitchell was driving the Expedition and had a collision that resulted in personal injuries to the driver of the other vehicle, Rogers. Rogers filed an action for personal injuries against Eugene Fastener. Plaintiff defended the action after defendant rejected a tender of the defense. After a jury returned a verdict for Rogers, plaintiff settled the case for the policy limit, $250,000.

In late July 1997, Cross asked defendant to delete the Expedition as a covered vehicle under defendant's policy because Eugene Fastener had duplicate coverage for the vehicle under plaintiff's policy. Defendant complied with that request in August by issuing an endorsement deleting the vehicle from coverage.

Plaintiff later filed this action as Eugene Fastener's subrogee, seeking contribution from defendant. As noted, defendant appeals from a judgment for plaintiff on summary judgment. The judgment required defendant to pay $200,000, its pro rata share—based on the parties' respective policy limits—of the settlement amount that plaintiff paid to Rogers.

■ In its first assignment of error, defendant argues that the trial court erred in concluding that Mitchell was a covered driver under defendant's policy as of April 10, 1997, the date of the disputed loss. The parties agree that the issue is primarily governed by ORS 742.450(6), which provides:

"A motor vehicle liability insurance policy issued for delivery in this state may exclude by name from coverage required by subsection (2)(a) of this section any person other than the named insured, for any of the reasons stated in subsection (7) of this section. When an insurer excludes a person as provided by this subsection, the insurer shall

obtain a statement or indorsement, signed by each of the named insureds, that the policy will not provide any coverage required by subsection (2)(a) of this section when the motor vehicle is driven by any named excluded person."[1]

Defendant acknowledges that Eugene Fastener never signed an endorsement excluding Mitchell from coverage. Instead, defendant contends that it complied with ORS 742.450(6) by having Mitchell sign the application for coverage in 1995, which, defendant asserts, includes a "statement" that Mitchell was excluded from coverage. Plaintiff responds that (1) the "statement" envisioned by ORS 742.450(6) cannot be embodied in an "application"; otherwise, the legislature would have used the latter term in describing that means of excluding a driver from coverage; (2) because the application was not attached to the policy, it neither was part of the policy, nor was admissible in evidence in any action based on the policy, including this case; and (3) even if the application constituted a "statement" under ORS 742.450(6), it did not validly exclude Mitchell from coverage because there is no evidence in the record that Mitchell was excluded for any of the reasons stated in ORS 742.450(7).

■　　The parties' dispute presents an issue of statutory construction that we analyze according to the template prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Under that template, we first consider the statute's text in context and, if necessary, its legislative history and other interpretive aids. *Id.*

■　　We begin with plaintiff's argument concerning the meaning of the word "statement" in ORS 742.450(6). The

---

[1] ORS 742.450(2)(a) requires a motor vehicle liability policy to provide the minimum liability limits specified by the FRL. As pertinent here, the minimum liability limit is $25,000 per person. ORS 806.070(2)(a).

ORS 742.450(7) provides:

"A person may be excluded from coverage under a motor vehicle liability insurance policy as provided in subsection (6) of this section:

"(a) Because of the driving record of the person. The Director of the Department of Consumer and Business Services by rule may establish restrictions on the use of the driving record in addition to other restrictions established by law.

"(b) Because of any reason or set of criteria established by the director by rule."

legislature did not define the word in that statute or any other pertinent provision of the Insurance Code. Nor is there any evidence that, as used in the statute, the word constitutes a term of art that departs from its ordinary meaning. *See Webster's Third New Int'l Dictionary* 2229 (unabridged ed 2002) (defining "statement" as "the act or process of stating, reciting, or presenting orally or on paper"); *see also Lafferty v. Newbry*, 200 Or 685, 688, 268 P2d 589 (1954) (adopting same ordinary meaning of "statement" from *Webster's* second edition to interpret another statute for which the legislature had not defined the word). Because there is nothing in the ordinary meaning of "statement" that excludes recitals contained in an insurance policy application, we initially reject plaintiff's argument that a statement of the kind contemplated by ORS 742.450(6) cannot derive from a policy application.

Plaintiff's second argument relies on a statute that provides context for our construction of ORS 742.450(6). ORS 742.016(1) provides:

"Except as provided in ORS 742.043, every contract of insurance shall be construed according to the terms and conditions of the policy. When the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. Any application that is not so delivered to the insured shall not be a part of the insurance policy and the insurer shall be precluded from introducing such application as evidence in any action based upon or involving the policy. Any oral representations by the insured that are not included in an application shall not be a part of the insurance policy and the insurer shall be precluded from introducing such representations as evidence in any action based upon or involving the policy."

Plaintiff constructs the following argument from that statute: (1) An application is not part of an insurance policy unless it was delivered to the insured with the policy; (2) the application in this case was not so delivered; (3) this is an action based on or involving defendant's policy; (4) therefore, defendant is precluded from introducing the application as evidence in this action.

 Defendant makes no cogent response to that argument. ORS 742.016 functions as a parol evidence rule in actions based on or involving insurance policies. *DeJonge v. Mutual of Enumclaw*, 315 Or 237, 242, 843 P2d 914 (1992). Although the courts have recognized exceptional circumstances in which the statute may not apply,[2] the statute states the rule that written contracts of insurance "shall be construed according to the terms and conditions of the policy." ORS 742.016(1). In the absence of those exceptional circumstances, none of which defendant claims to be present here, it is bound by the provisions of the policy issued.

Here, defendant did not deliver the application to its insured with the policy and, therefore, the application is not part of the policy. This is an action based on or involving that policy. Therefore, the application is inadmissible in this action. There is nothing in the text or context of either ORS 742.450(6) or ORS 742.016 to suggest that a "statement" purporting to exclude a driver from coverage that is solely embodied in an insurance application can be admitted in evidence if the application itself is inadmissible. To the contrary, because the only evidence of a statement excluding Mitchell was contained in the application and the application was not admissible in this action, the statement perforce also was inadmissible. It follows that the trial court did not err in concluding that Mitchell was a covered driver under defendant's policy.[3] Accordingly, we need not consider plaintiff's third argument, namely, that defendant did not exclude Mitchell for a reason permitted by ORS 742.450(7).

---

[2] For example, an insurer can be estopped to deny the existence of coverage notwithstanding the policy's terms and conditions. *DeJonge*, 315 Or at 242. Furthermore, the statute does not preclude the application of estoppel where a party to an insurance contract has been led to rely on a perceived waiver of a policy provision. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 158, 26 P3d 785 (2001). In addition, the statute does not apply to claims for coverage that are based on an oral agreement that does not include a written application. *Collver v. Salem Insurance Agency, Inc.*, 132 Or App 52, 60, 887 P2d 836 (1994).

[3] As a fallback position, defendant argues in its reply brief on appeal that, even if it failed to properly exclude Mitchell from coverage, it should be exposed to liability only to the extent of the $25,000 minimum limit required by the FRL, rather than to the extent of its full policy limit. Because defendant failed to properly raise the argument in an assignment of error in its opening brief, we decline to consider it. ORAP 5.45; *Ploplys v. Bryson*, 188 Or App 49, 57-58, 69 P3d 1257 (2003).

■ In its second assignment of error, defendant argues that the trial court erred in concluding that the Expedition was a covered vehicle under defendant's policy. Defendant asserts that it was entitled to retroactively cancel its coverage of the Expedition when Cross discovered that defendant's policy duplicated coverage under plaintiff's policy. The problem with that argument is that the purported cancellation occurred after the disputed loss occurred. Defendant cites no authority for the proposition that a motor vehicle liability insurer is entitled to cancel coverage after an otherwise covered loss has occurred. In fact, the law is to the contrary.

ORS 742.456 provides:

"The liability of an insurer with respect to the motor vehicle liability insurance policy required by ORS 806.060, 806.240 or 806.270 shall become absolute whenever injury or damage covered by the policy occurs. The policy may not be canceled or annulled as to such liability by any agreement between the insurer and the insured after the occurrence of the injury or damage. No statement made by the insured or on behalf of the insured and in violation of the policy shall defeat or void the policy. This section does not apply to motor vehicle liability insurance policies other than those required in connection with ORS 806.060, 806.240 or 806.270."

That statute prohibits the retroactive cancellation of a motor vehicle liability policy required by the FRL after the occurrence of a covered injury. Defendant asserts that its policy is not "an Oregon FRL policy." Defendant is mistaken. Its policy provides motor vehicle liability insurance coverage. Every motor vehicle liability insurance policy issued for delivery in Oregon must, at the least, provide coverage in the amounts required by the FRL. ORS 742.450(2); *see Viking Ins. Co. v. Petersen*, 308 Or 616, 621, 784 P2d 437 (1989) (because statute listing mandatory contents of motor vehicle liability policy refers to statute stating minimum coverage requirements, every such policy must contain that coverage as a minimum); *see also Collins v. Farmers Ins. Co.*, 312 Or 337, 340-41, 822 P2d 1146 (1991).

The fact that defendant's policy duplicated coverage provided by plaintiff's policy does not alter the analysis. *See Safeco Ins. Co. v. American Hardware Mutual Ins. Co.*, 169

Or App 405, 415, 9 P3d 749 (2000) (holding that a motor vehicle liability insurer may not rely on the existence of duplicate coverage to escape its obligation under ORS 742.450(2) to comply with the FRL). Because defendant's policy was a motor vehicle liability policy required by the FRL, defendant could not retroactively cancel coverage for the Expedition after the occurrence of a covered injury.[4]

Affirmed.

---

[4] Once again, defendant suggests for the first time in its reply brief on appeal that, if its policy is subject to ORS 742.456, the provisions of that statute "apply only to the extent of the minimum limits provided by the [FRL] rather than the entire $1 million policy limit." In its opening brief, defendant took the "all or nothing" position that its policy was not subject to the FRL and, therefore, ORS 742.456 was inapplicable to this case. Defendant did not assert that, even if it improperly attempted to retroactively cancel coverage on the vehicle, the trial court nonetheless erred in failing to limit its liability to the minimum limits required by the FRL. As with its similar argument concerning the exclusion of Mitchell as a covered driver, defendant's argument regarding the cancellation of coverage on the vehicle comes too late.